IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL J., ) <br> ) <br> Plaintiff, ) <br> ) No. 18 C 1485 <br> v. ) <br> ) Magistrate Judge <br> NANCY A. BERRYHILL, Acting ) Maria Valdez <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Michael J.'s claims for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 13] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied.

## BACKGROUND

### I.   PROCEDURAL HISTORY

On July 22, 2014, Plaintiff filed a claim for DIB, alleging disability since May 13, 2014. (R. 194–95.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on March 2, 2017. (R. 39–69.) Plaintiff personally

appeared and testified at the hearing and was represented by counsel. (*Id.*) Medical expert ("ME") Michael Cremerius, Ph.D., and vocational expert ("VE") Pamela Tucker also testified. (*Id.*) On April 26, 2017, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. (R. 20–38.)

## II.    ALJ DECISION

The ALJ proceeded through the five-step sequential evaluation process required by the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520 and 416.902(a). After noting that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2016, she found at step one that Plaintiff had not engaged in substantial gainful activity from May 13, 2014, the alleged onset date, through December 31, 2016, the date last insured. (R. 25.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus with peripheral neuropathy and acute kidney injury, obesity, depression, anxiety, bereavement, alcohol abuse, and degenerative disc disease of the lumbar spine. (R. 25.) The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment. (*Id.*) *See* C.F.R. Part 404, Subpt. P, App'x 1. The ALJ analyzed Plaintiff's impairments under listings 1.02 (major dysfunction of a joint); 1.04 (disorders of the spine); 11.14 (peripheral neuropathy); and 14.09 (inflammatory arthritis).

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except

with the following limitations: occasional balancing, stooping, kneeling, crouching, crawling, and climbing ramps or stairs, but never climbing ladders, ropes, or scaffolds; no work at unprotected heights or around hazardous machinery; no commercial driving; working on a flat even surface and avoiding concentrated exposure to vibration; simple routine work but no complex details; only occasional contact with coworkers and supervisors and no contact with the general public as part of routine job duties; no fast-paced assembly or work that is pace-setting; no strict production quotas but can have end of day more variable rate. (R. 28.)

At step four, the ALJ concluded that Plaintiff was not capable of performing his past relevant work as a carpenter. (R. 31.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including packer, assembly, and sorter, and therefore Plaintiff was not disabled. (R. 32–33.)

The Social Security Administration Appeals Council then granted Claimant's request for review. (R. 1–9). The Appeals Council adopted the ALJ's decision but altered the date last insured to December 31, 2017. (R. 5). The Appeals Council's decision is the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

# DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform her former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1–4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

5

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence.").

### III. ANALYSIS

Plaintiff argues that the ALJ's decision[1] is erroneous for three reasons: (1) she failed to properly evaluate Plaintiff's medication side effects; (2) she erred in her analysis of Plaintiff's subjective symptoms; and (3) she did not adequately weigh medical opinions.

---

[1] Although the Appeals Council granted review, it adopted the findings of the ALJ. Therefore, the Court will refer to the ALJ's decision in this opinion.

6

### A. Treating Physician Rule

The ALJ gave "no controlling or great weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Sapana Chokshi, M.D. Dr. Chokshi completed a mental medical source statement in the fall of 2015. (R. 805–06.) The opinion stated that Plaintiff would have either a fair or poor ability to perform in all twenty-three work-related mental activities.[2] (*Id.*) Dr. Chokshi noted that Plaintiff was responding to treatment, but she went on to explain that medication adjustments and issues with focus, attention, distraction, and motivation were ongoing. (*Id.*) Finally, Dr. Chokshi noted that Plaintiff needed reassurance, and was seeing a therapist regularly for support. (*Id.*)

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. §404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If the ALJ does not give the treating physician's opinion controlling weight, he "must offer good reasons" for discrediting the opinion. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted). Treating physician opinions are given more weight due to "their greater familiarity with the claimant's condition and circumstances." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

---

[2] Examples of those areas include the ability to remember locations and work-like procedures; understand and remember short, simple instructions; carry out short, simple instructions; sustain an ordinary routine without special supervision; complete a normal workday or workweek; perform at a consistent pace; interact appropriately with the public; maintain socially appropriate behavior; and set realistic goals or make plans independently of others. (R. 805-06.)

7

The ALJ dismissed Dr. Chokshi's opinion because it was inconsistent with the opinions of the medical expert and the state agency. (R. 31.) She also found that there was a lack of medical evidence to support the extreme findings, that treatment records show improvement, and Dr. Chokshi's own opinion indicated that Plaintiff was responding to treatment. (*Id.*) Finally, the ALJ noted the ME's opinion that the treating psychiatrist may have been considering Plaintiff's mental limitations in combination with his physical pain and limitations. (*Id.*)

The ALJ may not use opinions from doctors who never examined Plaintiff to discredit a treating physician's opinion unless the treating physician's limitations are not supported by the record. *Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); *see Engstrand v. Colvin*, 788 F.3d 655, 662 (7th Cir. 2015). An opinion provided by "a non-examining physician does not, by itself, suffice [to reject an examining physician's opinion]." *Gudgel*, 345 F.3d at 470. The ALJ here cited to the opinions of the state agency physicians and the ME to discredit Dr. Chokshi's opinion, which is improper unless Dr. Chokshi's opinion is unsupported by the record.

The ALJ points to two pieces of evidence purporting to discredit Dr. Chokshi's opinion: treatment notes showing improvement and the medical source statement indicating that Plaintiff was responding to treatment. (R. 31.) Plaintiff correctly argues that notations of "improvement" or responding to treatment do not on their own indicate that Plaintiff's limitations are not still at a disabling level. "There can be a great distance between a patient who responds to treatment and one who is

able to enter the workforce." *Scott*, 647 F.3d at 739-40. In order to discount Dr. Chokshi's opinion based on Plaintiff's response to treatment, the ALJ must explain how his improvement restored his ability to work. *See Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) ("Simply because one is characterized as 'stable' or 'improving' does not mean that [one] is capable of [ ] work"); *Scott*, 647 F.3d at 739-40 ("There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce."). The ALJ failed to do so here. Furthermore, "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The ALJ must consider the entire record, including those portions of the record that do not support the ALJ's ultimate determination. *Scrogham,* 765 F.3d at 697. Especially in cases involving mental illness, the ALJ must evaluate the whole record, as symptoms of mental illness can frequently fluctuate. *Scott*, 647 F.3d at 739; *see also Punzio v. Astrue,* 630 F.3d 704, 710-711 (7th Cir. 2011) ("[A] person who suffers from a mental illness will have better days and worse days, so a snapshot at any single moment says little about her overall condition").

Dr. Chokshi's medical source statement indicates that although Plaintiff is responding to treatment, medication adjustments and problems with focus, attention, distraction, and motivation were ongoing. This notation is consistent with the limitations listed by Dr. Chokshi, as responding to treatment does not necessarily indicate that Plaintiff is no longer is suffering from any symptoms or

9

limitations. Dr. Chokshi noted that Plaintiff was still struggling with symptoms and limitations despite a positive response to treatment.

The ALJ also credited the ME's opinion that the marked limitations assessed by Dr. Chokshi may be a result of her considering a combination of mental and physical symptoms. (R. 31.) First, there is nothing in the opinion that suggests Plaintiff's physical symptoms were considered. Second, the ALJ fails to explain how Dr. Chokshi's opinion would be discredited if she had considered a combination of physical and mental limitations. Dr. Chokshi is a psychiatrist, and therefore she could consider physical factors that the ME as a psychologist could not. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). The ME acknowledged this in the hearing. (R. 47.) While the ALJ noted that the ME conceded that Dr. Chokshi's opinion may have considered more than just the mental symptoms alone, the ALJ still used the ME's opinion to discredit Dr. Chokshi. (R. 31.) Without any additional analysis or explanation, the ALJ has failed to build a logical bridge from the evidence to her conclusion. *Clifford*, 227 F.3d at 872.

Finally, the ALJ failed to discuss the factors required by 20 C.F.R. § 404.1527(c). Where an ALJ does not give a treating physician controlling weight, the regulations require the ALJ to consider a variety of factors when determining what weight to give the treating physician. *Campbell*, 627 F.3d at 308. Those factors include: (1) the examining relationship; (2) the length of treatment

relationship and frequency of examination, along with the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion; (5) the specialization of the physician; and (6) any other important factors relevant to the decision. 20 C.F.R. § 404.1527(c). Plaintiff asserts that the ALJ does not consider the length of treatment relationship and frequency of examination, the nature and extent of the treatment relationship, or the specialization of the treating psychiatrist. The Court agrees.

Numerous factors favor Dr. Chokshi's opinion over the reviewing ME psychologist or state agency physicians, including the length and nature of the treating relationship as well as Dr. Chokshi's specialty. Plaintiff was seen a total of eight times over a period of at least fifteen months by Dr. Chokshi herself and dozens of times by other staff members during that time period. (R. 444-516, 805-06, 932-965); *see Campbell v. Astrue*, 627 F.3d at 308 (holding that an opinion by a treating psychiatrist where the relationship lasted fifteen months with relatively consistent findings "should be given great weight.").

The ALJ acknowledged Dr. Chokshi's specialty as a psychiatrist yet did not explain why she gave more weight to the opinions of the psychologist ME and state agency physicians who lacked the same background. *See Scott*, 647 F.3d at 740 (finding that a treating physician's specialty as a psychiatrist favored crediting his opinion with more weight than it would if he was a psychologist); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (per curiam) (holding that the ALJ failed to support the decision with substantial evidence where "the choice to accept one

11

physician's opinions but not the other's was made by the ALJ without any consideration of … the differing specialties of the two doctors").

### B. Remaining Arguments

The Court expresses no opinion about the decision to be made on remand but encourages the Commissioner to use all necessary efforts to build a logical bridge between the evidence in the record and her ultimate conclusions, whatever those conclusions may be. *See, e.g.*, *Myles v. Astrue*, 582 F.3d at 678 ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). The Commissioner should not assume that any other claimed errors not discussed in this Order have been adjudicated in her favor. On remand, the Commissioner therefore must carefully articulate her findings as to every step.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 13] is granted in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 22] is denied. The court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**  **ENTERED:**

*Maria Valdez*

**DATE:   April 8, 2019**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**